Frederick W. GOODING,
Plaintiff–Appellee,

v.

SHEARSON LEHMAN BROTHERS
INC. and Phillip J. Failla,
Defendants–Appellants.

Frederick W. GOODING,
Plaintiff–Appellant,

v.

SHEARSON LEHMAN BROTHERS
INC. and Phillip J. Failla,
Defendant–Appellee.

Nos. 88–5506, 88–5509.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1988.

Decided June 23, 1989.

Robert H. Logan, Keesal, Young & Logan, Long Beach, Cal., for Shearson Lehman Bros. Inc., and Phillip J. Failla.

Melanie A. Calvert, Pasadena, Cal., for Frederick W. Gooding.

Before FLETCHER, ALARCON and KOZINSKI, Circuit Judges.

ALARCON, Circuit Judge:

Shearson Lehman Brothers, Inc. and Phillip J. Failla, a broker then employed by Shearson, (collectively referred to as Shearson) appeal (No. 88–5506) from the district court's denial of its motion to compel arbitration of the federal securities claims. Frederick W. Gooding (Gooding) cross appeals (No. 88–5509) from the portion of the order granting Shearson's motion to compel arbitration of state law claims and the stay of further proceedings concerning the federal claims pending arbitration.

## I

### PERTINENT FACTS

Gooding entered into two customer service agreements with Shearson on September 12, 1984 (1984 agreements) concerning his individual account and his corporate account. Each agreement provided that controversies between the parties relating to these accounts would be arbitrated.

Gooding commenced this action on July 2, 1987, by filing a complaint alleging three claims of securities law violations arising under federal law and four causes of action based on violations of California law. On August 17, 1987, Shearson filed its answer which included an affirmative defense that Gooding had signed an agreement to arbitrate any controversy arising out of their business relationship.

On October 2, 1987, Shearson filed a petition to compel arbitration and to stay proceedings pending arbitration. On October 16, 1987, Gooding filed his opposition to the petition to compel arbitration and to stay proceedings. On October 6, 1987, the district court vacated the hearing date on the petition to compel arbitration and notified the parties that the matter would be taken under submission.

The court entered its judgment on November 13, 1987, compelling arbitration of the state claims, denying arbitration of the federal causes of action, and staying further court proceedings pending arbitration.

Paragraph 13 of the 1984 agreements reads as follows:

13. This agreement shall inure to the benefit of your successors and assigns, shall be binding on the undersigned, my heirs, executors, administrators and assigns, and shall be governed by the laws of the State of New York. Unless unenforceable due to federal or state law, *any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration* in accordance with the rules then in effect, of the National Association of Securities Dealers, Inc., or the Boards of Directors of the New York Stock Exchange, Inc., and/or the American Stock Exchange, Inc., as I may elect. If I do not make such election by registered mail addressed to you at your main office within 5 days after demand by you that I make such election, then you may make such election. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof. (Emphasis added)

On August 5, 1985, Gooding executed another customer service agreement for his individual account. The 1985 agreement provides in Paragraph 17 that "[t]his agreement is not subject to any oral modification, the signing of this agreement revokes any prior customer's or client's

agreement for the purchase and sale of securities and put and call options made with Shearson Lehman or any of its predecessors, successors, assignors or assigns." Thus, any securities transaction occurring after August 5, 1985, would be governed by this agreement. The 1985 agreement also contained an arbitration clause which included the following language not present in the 1984 agreement: "This agreement to arbitrate does not apply to any controversy with a public customer for which a remedy may exist pursuant to an expressed or implied right of action under certain of the federal securities laws."

In his opposition to the motion to compel and to stay further proceedings pending arbitration, Gooding declared, under penalty of perjury, on information and belief that he executed a similar customer service agreement governing his corporate account with Shearson. Gooding also alleged that he "believed that this agreement is in the possession of [Shearson's] attorneys."

## II

■ On November 19, 1988, while this case was pending before this court, the President signed into law the Judicial Improvements and Access to Justice Act of 1988. Section 1019 of Title X of the Act amends 9 U.S.C. § 15 by adding the following new section:

(a) An appeal may be taken from—

(1) an order—

(A) refusing a stay of any action under section 3 of this title,

(B) denying a petition under section 4 of this title to order arbitration to proceed,

(C) denying an application under section 206 of this title to compel arbitration,

(D) confirming or denying confirmation of an award or partial award, or

(E) modifying, correcting, or vacating an award:

(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

(3) a final decision with respect to an arbitration that is subject to this title.

(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—

(1) granting a stay of any action under section 3 of this title;

(2) directing arbitration to proceed under section 4 of this title;

(3) compelling arbitration under section 206 of this title; or

(4) refusing to enjoin an arbitration that is subject to this title.

Pub.L. 100–702, § 1019(b), 102 Stat. 4642, 4671 (1988). In *Nichols v. Stapleton,* 874 F.2d 707, 708 (9th Cir.1989) (per curiam); *see also Lynda Kruso v. ITT Corp.,* 872 F.2d 1416, 1424 (9th Cir.1989) we held that section 1019(b) applies retroactively.

Therefore, we dismiss Gooding's appeal of the district court order as it pertains to directing arbitration of the state law claims and the stay of further proceedings on the federal claims pending arbitration for lack of jurisdiction. We review the district court's order denying Shearson's motion to compel arbitration of the federal securities claims under section 1019(a) of the Judicial Improvements Act.

## III

■ "This court reviews decisions regarding the validity and scope of arbitration clauses de novo." *First Investors Corp. v. Am. Capital Fin. Serv., Inc.,* 823 F.2d 307, 309 (9th Cir.1987).

Shearson argues that the district court erred in concluding that the 1985 agreement excludes arbitration of the federal claims. Shearson also appears to argue that because the language excluding "an express or implied right of action under certain of the federal securities laws" was placed in the 1985 customer service agreement to satisfy Rule 15c2–2, it should not be enforced because the rule has been rescinded. We disagree.

As set forth above, the 1985 arbitration clause expressly provided that its provisions were inapplicable to controversies "for which a remedy may exist . . . under

**284**

certain federal laws." We considered the effect of an identical exclusionary provision in an arbitration clause in *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754 (9th Cir.1988). In *Van Ness Townhouses* the standard form Customer Agreement from Shearson provided:

> Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof shall be settled by arbitration.... *This agreement to arbitrate does not apply to any controversy with a public customer for which a remedy may exist pursuant to an expressed or implied right of action under certain of the federal securities laws.*

*Van Ness Townhouses*, 862 F.2d at 756.

We found in *Van Ness Townhouses* that "it is unclear which of the 'certain' securities laws, or claims arising thereunder, were meant to be nonarbitrable." *Id.* at 757. In a similar case, "[w]e found that the exclusionary language expressly granted the plaintiff a contractual right to litigate his securities claims." *Id.* at 758 (citing *Leicht v. Batemen, Eichler, Hill, Richards, Inc.*, 848 F.2d 130, 133 (9th Cir.1988) (the brokerage firm drafted customer agreements in response to Rule 15c2–2 and such exclusionary language gave Thomas Leicht the option of resolving his federal securities disputes through litigation rather than arbitration). Therefore, we decided in *Van Ness Townhouses* that "the provision in Shearson's agreement expressly excluded from arbitration those claims arising under the federal securities laws (both the 1933 and 1934 Acts). A *fortiori*, such an express exclusion from arbitration is an express grant of the right to litigate those claims." *Van Ness Townhouses*, 862 F.2d at 758 (footnote omitted).[1]

There is no evidence in the record in this matter that the parties did not intend to be bound by the exclusionary provision in the arbitration clause. Both parties must abide by the terms of the contract. Under the contract, Shearson agreed that Gooding had the option of seeking a judicial determination of his federal securities law claims instead of submitting them to arbitration.

The district court pointed out that any ambiguity as to the meaning of "certain federal laws" should be construed against Shearson since they drafted the agreements. Shearson argues that by inserting the word "certain" it was Shearson's intention "merely [to put] prospective plaintiffs on notice, as required by law, that certain courts in certain jurisdictions at the time a motion to compel arbitration is heard may hold that certain claims are not arbitrable." There is no evidence in this record that it was Shearson's intention to qualify the exclusionary language in the arbitration clause in this matter. In any event, Shearson did not disclose this intention to Gooding. "[T]he undisclosed intentions of the parties are ... immaterial ... the outward manifestation or expression of assent is controlling." *Titan Group, Inc. v. Sonoma Valley County Sanitation Dist.*, 164 Cal.App.3d 1122, 1127, 211 Cal.Rptr. 62 (1985); *see also Warehousemen's Union Local No. 206 v. Continental Can Co.*, 821 F.2d 1348, 1350 (9th Cir.1987). Therefore, we conclude that the arbitration agreement excludes arbitration of the federal claims.

## IV

### CONCLUSION

The judgment of the district court denying arbitration of the federal claims is AFFIRMED. Gooding's appeal of the order compelling arbitration of the state law

---

**1.** Notwithstanding the fact that parties may arbitrate claims under the Securities Act of 1933, *Rodriguez v. Shearson/American Express, Inc.*, — U.S. —, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), and the Securities Act of 1934, *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1982), the provision in the agreement expressly excludes arbitration of the federal securities claims. Therefore, under the express provisions of the agreement, the parties may litigate claims under both the Securities Act of 1933 and the Securities Act of 1934.

claims and staying further proceedings is DISMISSED for lack of jurisdiction.