United States Court of Appeals,

Fifth Circuit.

No. 93-5049.

Don TAYLOR, Plaintiff-Appellee,

v.

INVESTORS ASSOCIATES, INC. and Mitch Goldberg,
Defendants-Appellants.

Aug. 19, 1994.

Appeals from the United States District Court for the Eastern
District of Texas.

Before KING, JOLLY and DAVIS, Circuit Judges.

PER CURIAM:

Having studied the briefs filed in this appeal, having

considered the arguments of counsel, and having reviewed the

record, we are fully convinced that the district court correctly

decided the issues in this appeal in its well-reasoned opinion,

which we attach hereto and adopt as the opinion of this court. The

judgment of the district court is therefore

AFFIRMED.

APPENDIX

In the United States District Court
for the Eastern District of Texas
Paris Division


Don Taylor, Plaintiff,

v.

Investors Associates, Inc., Mitchell Goldberg, also known as
Mitch Goldberg, Defendants.

3:93 CV 20.

1

*MEMORANDUM OPINION*

Pending before the court for adjudication are the motions of defendants Mitchell Goldberg ("Goldberg"), and Investors Associates, Inc. ("IAI"), for an order to stay proceedings and compel arbitration, or, alternatively, to dismiss the action.

I. Background

The facts in this case are undisputed. IAI is a securities broker-dealer. Beginning in December 1991, Mitchell Goldberg, as a representative of IAI, solicited plaintiff, Don Taylor, by telephone, to buy and sell stock from IAI. On January, 6, 1992, Taylor made his first trade with IAI, purchasing stock of United Fashions at a total cost of $132,233.75. On January 7, 1992, Taylor executed a Client's Agreement with Prudential-Bache Securities, Inc. ("Prudential"). *See* Client's Agreement between Prudential-Bache Securities, Inc. and Don Taylor, Exhibit B to plaintiff's response to defendant Goldberg's motion to stay proceedings and compel arbitration [hereinafter "Agreement"]. By the terms of the Agreement, Prudential was designated as a clearing broker, whose function it was to keep records relating to Taylor's account.

Taylor filed a complaint in this court against IAI and Goldberg alleging, *inter alia,* violations of § 10(b) of the Securities and Exchange Act of 1934, as amended; Rule 10(b)(5) promulgated thereunder, § 12(2) of the Securities Act of 1933, as amended; and 18 U.S.C. § 1962(a), (b), and (c) ("RICO"), all arising from the sale of stock by IAI in its capacity as a

securities broker-dealer for Taylor.  In addition, Taylor alleges common law fraud against defendants, under the provisions of Article 581-33A(2) of the Texas Blue Sky Law;  pursuant to Section 27.01 of the Texas Business and Commerce Code, for breach of a fiduciary obligation;  and under Section 17.41 of the Texas Deceptive Trade Practices-Consumer Act, for negligence and conspiracy.  In response, defendant Goldberg filed a motion to stay proceedings and compel arbitration.  IAI filed a similar motion, as well as a motion to dismiss the claims.  The issue raised by these motions is whether Goldberg, through IAI, is an agent or third party beneficiary of the arbitration agreement between plaintiff and Prudential.  If so, then the defendants' motion to compel arbitration must be granted;  if not, it must be denied.

II. Analysis

A. The Arbitration Clause

The arbitration clause at issue in this action is part of a Client's Agreement, signed by Taylor, which was sent on Prudential's letterhead.  The clause, paragraph 14, providing for compulsory arbitration does *not* mention defendants IAI or Goldberg either by name or by function, and defendants did not sign the document.  Paragraph 14 says arbitration is binding on the "parties."  The only parties discussed in the Agreement are Taylor ("I" or "undersigned") and Prudential ("you").  Defendants' argument that they are included in the term "you" is based upon the fact that it was IAI which allegedly provided Taylor with the Agreement.  These circumstances are insufficient to support IAI's

3

contention that it was a party to the agreement.  Unlike the case of *Okcuoglu v. Hess, Grant & Co.,* 580 F.Supp. 749 (E.D.Pa.1984), where the court held the arbitration clause providing protection for the clearing broker's agents and corresponding firms to be binding upon the introducing broker, the Agreement here does not mention IAI, either implicitly or expressly.  As such, the critical question is whether defendants can enforce the arbitration provision in the Agreement even though defendants are not parties to the Agreement.  Although the Fifth Circuit Court of Appeals has not directly dealt with this issue, it appears that the case law from other jurisdictions overwhelmingly rejects attempts by introducing brokers to enforce arbitration agreements contained in customer agreements between their clients and clearing brokers.[1]

The Agreement further states that "any controversy arising out of or relating to my account shall be settled by arbitration."  On its face the provision is broad, but, if interpreted contextually, the intent of the parties is manifest—to arbitrate claims by or against the clearing house concerning its handling of Taylor's account.  This interpretation is reinforced by the accompanying letter sent by Prudential defining Prudential's role in Taylor's stock purchase transaction:[2]

---

[1]*See, e.g., Ziegler v. Whale Securities Co., L.P.,* 786 F.Supp. 739 (N.D.Ind.1992);  *Shaffer v. Stratton Oakmont, Inc.,* 756 F.Supp. 365 (N.D.Ill.1991);  *Conway v. Icahn Co., Inc.,* 787 F.Supp. 340 (S.D.N.Y.1990).

[2]*See* Exhibit B, Prudential's Correspondent Allocation of Responsibility Letter, attached to Goldberg's motion to stay proceedings and compel arbitration.

4

Prudential Securities Incorporated ("PSI") is not your broker. PSI is your Broker's clearing firm. As such, PSI handles the back office, or clearing functions for your Broker and, for this purpose only, PSI has opened an account in your name.

This language makes it perfectly clear that defendants are entities independent from Prudential, a clearing house.

Defendants rely upon the agency principles upheld in *Okcuoglu* to support their contention that IAI and Goldberg, although not parties to the Agreement, are entitled to enforce the arbitration clause contained in Prudential's Agreement with Taylor. The facts of the case at hand are clearly distinguishable from those relied upon by the court in *Okcuoglu,* in that *Okcuoglu* involved the liquidation of stock from the customer's (plaintiff's) account to meet a margin call. 580 F.Supp. at 752. The liquidation was performed after consultation with the clearing broker, even though the customer had disapproved the transaction. In that case, the transaction directly involved the clearing broker, and the court determined that so long as it was possible that the clearing broker could be brought into the dispute as a necessary party, the dispute as to the unauthorized options transaction should be submitted to arbitration as set forth in the Customer Agreement. *Id.* at 751. The court in *Anderson v. Brock Investor Services, Inc.,* No. 4-92-1032, slip op. (D.Minn., Jan. 14, 1993), found the factual similarity to *Okcuoglu* dictated the conclusion that the introducing broker could enforce the clearing broker's right to compel arbitration. In *Anderson,* the transaction related to alleged unauthorized trades; thus the possibility existed that the clearing broker would yet be joined in the litigation. Also, the

5

arbitration agreement in *Anderson* expressly applied to the clearing broker and its *employees and agents.* *Id.* at 3, 5.

In contrast, Prudential is not a party to this action, and no claims involved in this lawsuit pertain to Prudential or plaintiff's accounts. The transactions sued upon in *Okcuoglu* and *Anderson* relate to unauthorized or unexecuted trades, whereas plaintiff Taylor's claim relates solely to misrepresentations made by the defendants. In a factual situation mirroring the case at hand, the court in *Mowbray v. Moseley, Hallgarten, Estabrook and Weeden,* 795 F.2d 1111 (1st Cir.1986), expressly distinguished *Okcuoglu,* because the disputed transaction in *Okcuoglu* involved the liquidation of stock whereby the clearing house's services had been employed. The Court of Appeals for the First Circuit concluded that, because no claim had been asserted which intimated even a "potential" involvement of the clearing broker, the activities of the clearing broker were not a subject of dispute, and hence no contingent right existed for the introducing broker to invoke the arbitration agreement. *Mowbray,* 795 F.2d at 1116-1117.

B. No Agency Relationship Existed

Other courts have held that, even absent an express denial of a principal and agent relationship in the agreement between client and clearing broker, such a relationship does not exist between them.[3] Also, the Second Circuit refused to find an agency relationship between an introducing broker and clearing broker,

---

[3]*Lester v. Basner,* 676 F.Supp. 481 (S.D.N.Y.1987); *Ahn v. Rooney, Pace Inc.,* 624 F.Supp. 368 (S.D.N.Y.1985).

even though the agreement executed by the customer and clearing broker stated that the clearing broker was the introducing broker's agent with respect to the customer's account. *McPheeters v. McGinn, Smith and Co., Inc.,* 953 F.2d 771, 773 (2nd Cir.1992). Like the Agreement herein involved, the agreement in *McPheeters* nowhere stated that the clearing broker acted as the introducing broker's agent in entering into the contract generally, and the Second Circuit refused to read such a provision into the document. *Id.* Both *Okcuoglu* and *Anderson,* accordingly, can be distinguished on the ground that, unlike those cases, the transaction in question involves only a straight securities fraud claim; thus, in this case, the clearing broker has no nexus with the transaction, and it cannot be found to be an agent of the introducing broker.

Defendant IAI argues that it is an agent of Prudential, and under the language of the arbitration agreement, all disputes with Prudential must be submitted to arbitration. In this relation, IAI relies on *Nesslage v. York Securities, Inc.,* 823 F.2d 231, 233 (8th Cir.1987), for the proposition that a customer must arbitrate disputes with a introducing broker even where, as here, only the clearing broker was a party to the arbitration agreement. *Nesslage* is, however, distinguishable on its facts, specifically: (1) IAI is not an agent of Prudential, because plaintiff was never advised that IAI was acting in that capacity for Prudential; (2) there is no evidence that plaintiff intended IAI to be a party to the arbitration agreement, and, consequently, an agent or third party beneficiary of such agreement; and (3) there is no evidence that

7

an agency relationship actually existed between Prudential and IAI.

C. Third Party Beneficiary Analysis Fails

Finally, IAI asserts that it is a third party beneficiary of Prudential, and, as such, is entitled to enforcement of the arbitration provision. The case relied upon by IAI is an unpublished opinion from the United States District Court for the Northern District of Texas, *Donald R. Cathey v. Dallas Securities Investment Corporation et al,* No. 3-90-2686-T, slip op. (N.D.Tex. July 9, 1991). In *Cathey,* the court upheld an arbitration agreement under a third party beneficiary analysis in a case in which the plaintiff asserted a claim against the clearing broker as well as the introducing broker. *Cathey,* slip op. at 5. Additionally, in *Cathey,* there was an agreement to settle disputes between the clearing house and the introducing broker through arbitration. *Id.,* slip op. at 6. Here, there was no such agreement.

In a New York District Court case, with facts similar to these, the plaintiff signed a "Customer's Agreement" with the clearing broker and the introducing broker was found not to be a party to such an agreement. *Lester v. Basner,* 676 F.Supp. 481, 482-483 (S.D.N.Y.1987). There, the court said that the issue in the third party beneficiary determination was whether the introducing broker was an intended beneficiary or merely an incidental beneficiary to the Customer's Agreement. The court found that the introducing broker was an "incidental" beneficiary, because the agreement was silent as to whether the terms of the

8

contract applied to introducing brokers, and the defendants were unable to show any intent to make the introducing broker a third party beneficiary to the contract. *Id.* at 484-485. An intent to benefit a third party must be apparent from the construction of the contract in light of all surrounding circumstances to qualify that party as a third party beneficiary. *O'Connor v. R.F. Lafferty & Co., Inc.,* 965 F.2d 893 (10th Cir.1992).

Furthermore, a literal interpretation of the language of this Agreement suggests that the "omission of defendants from the clause allowing arbitration and as signatories should be regarded as purposeful." *See Mowbray,* 795 F.2d at 1116. Specifically, the arbitration provision contained in the Agreement expressly states that it is binding on the "undersigned, my heirs, executors, administrators and assigns"; and shall "inure to the benefit of your successors and assigns." It follows that, if the parties had intended to benefit the broker, then the Agreement would have said so. *Expressio unius est exclusio alterius.*[4] Also, the Agreement makes no reference to defendants by name or function, nor does it refer to introductory brokers in general. In sum, no consent to arbitration with Goldberg or IAI may be implied based solely on the relationship between the introducing broker and the clearing house. *Id.*

The introducing broker was not included in the arbitration clause between Taylor and Prudential; because of that, it is

---

[4]*See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* --- U.S. ---- 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

reasonable to draw the inference that the parties did *not* intend for the defendants, the introductory firm (IAI) and its agent (Goldberg), to be a beneficiary of the arbitration clause. The plain meaning of the chosen language is clear. The defendants cannot compel arbitration.

III. CONCLUSION

For the reasons set forth above, IAI and Goldberg's motion to stay proceedings and compel arbitration, or, alternatively, to dismiss, is denied. An order to that effect will issue concurrently with this memorandum opinion.

SIGNED this 14th day of June, 1993.

/s/ William Wayne Justice

William Wayne Justice

United States District Judge